UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CAR-FRESHNER CO.; and JULIUS SÄMANN, LTD.,

                Plaintiffs,

v.                                        7:10-CV-1491
                                        (GTS/DEP)

AIR FRESHNERS, INC. d/b/a SCENT USA; and
SLAWOMIR M. WARZOCHA a/k/a MICHAEL
WARZOCHA,

                Defendants.
_____

APPEARANCES:                          OF COUNSEL:

HANCOCK ESTABROOK, LLP          ASHLEY D.  HAYES, ESQ.
  Counsel for Plaintiffs
1500 Axa Tower I
Syracuse, NY 13221

ZAWISNY & ZAWISNY, P.C.           MARK T.  ZAWISNY, ESQ.
  Counsel for Defendants
578 Driggs Avenue
Brooklyn, NY 11211

GLENN T. SUDDABY, United States District Judge

## MEMORANDUM-DECISION and ORDER

      Currently pending before the Court, in this trademark infringement action filed by Car-

Freshner Co. and Julius Sämann, Ltd. ("Plaintiffs") against Air Freshners, Inc. d/b/a Scent USA

and Slawormir M. Warzocha a/k/a Michael Warzocha ("Defendants"), are the following three

motions: (1) Plaintiffs' motion for default judgment pursuant to Fed. R. Civ. P. 55(b); (2)

Defendants' cross-motion to set aside the Clerk's entry of default against them pursuant to Fed.

R. Civ. P. 55(c); and (3) Plaintiffs' motion to strike Defendants' Answer.  (Dkt. Nos. 14, 21, 22.)

For the reasons stated below, Plaintiffs' motion for entry of default judgment against Defendants

is granted in part and denied in part; Defendants' motion to set aside the Clerk's entry of default is granted in part and denied in part; and Plaintiffs' motion to strike Defendants' Answer is granted in part and denied in part.

## I.    RELEVANT BACKGROUND

### A.    Plaintiffs' Complaint

Liberally construed, Plaintiffs' Complaint asserts the following claims against Defendants: (1) a claim of trademark infringement in violation of 15 U.S.C. § 1114(1); (2) a claim of false designation of origin in violation of 15 U.S.C. § 1125(a); (3) a claim of trademark infringement in violation of the common law of the State of New York; (4) a claim of unfair competition in violation of the common law of the State of New York; (5) a claim of contributory trademark infringement, unfair competition, and dilution; (6) trademark dilution in violation of 15 U.S.C. § 1125(c); (7) a claim of trademark dilution in violation of N.Y. Gen. Bus. Law § 360-l; and (8) a claim of violation of a prior Consent Judgment between the parties.  (*See generally* Dkt. No. 1.)

Generally, in support of those claims, Plaintiffs' Complaint alleges that, despite a Consent Judgment having been filed against Defendants in a prior action for substantially the same conduct as alleged in this action, Defendants have promoted and sold air fresheners after the Consent Judgment that infringe upon Plaintiffs' registered trademarks, in violation of Federal and New York law.  (*Id.*)  Familiarity with the specific factual allegations supporting the claims in Plaintiffs' Complaint is assumed in this Decision and Order, which is intended primarily for the review of the parties.

**B.      Plaintiffs' Service of Their Complaint and Defendants' Failure to Answer**

On March 7, 2011, Plaintiffs served their Complaint on Defendant Air Freshners, Inc.

(Dkt. No. 8.)  Pursuant to Fed. R. Civ. P. 12(a), Defendant Air Freshners, Inc.'s Answer was due

on or before March 30, 2011.

On March 19 and 22, 2011, Plaintiffs served their Complaint on Defendant Warzocha

pursuant to N.Y. C.P.L.R. § 308(4), as authorized by Fed. R. Civ. P. 4(e)(1).  (Dkt.  No. 7.)

When service is made under N.Y. C.P.L.R. § 308(4), service is complete 10 days after the proof

of service is made to the Clerk of the Court.  Because Plaintiffs filed their proof of service with

the Clerk on March 25, 2011, service on Defendant Warzocha was complete on April 4, 2011,

pursuant to N.Y. Gen. Constr. Law § 20.  Pursuant to Fed. R. Civ. P. 12(a), Defendant

Warzocha's Answer was due on or before April 25, 2011.

**C.      Clerk's Office's Entry of Default**

On May 4, 2011, Plaintiffs filed for entry of default.  (Dkt. No. 9.)  On May 5, 2011, the

Clerk of the Court entered default against Defendants, pursuant to Fed. R. Civ. P. 55(a).  (Dkt.

Nos. 11, 12.)  At that time, the Court directed Plaintiffs to make the appropriate motion for

default judgment within 30 days from the date that Clerk entered the default.  (*See* Docket Sheet

Entry on May, 5, 2011.)

**D.      Plaintiffs' Motion for Default Judgment**

On May 27, 2011, by means of a letter, Plaintiffs moved for an extension of the Court's

deadline to move for default judgment from June 6, 2011, to July 6, 2011.  (Dkt. No. 13.)  The

Court granted Plaintiffs a deadline extension until August, 8, 2011.  (*See* Docket Sheet Entry on

May 27, 2011.)  On August 3, 2011, Plaintiffs subsequently filed a motion for default judgment

against Defendants, pursuant to Fed. R. Civ. P. 55(b).  (Dkt. No. 14.)  In their motion, Plaintiffs

request a permanent injunction enjoining Defendants from further infringing on Plaintiffs'

trademarks, damages for contempt for violating the Consent Judgment, damages for violating the

Trademark Act, and an award of attorneys' fees and costs.  (*Id.*)

Generally, in support of their motion for default judgment, Plaintiffs argue that

Defendants' failure to answer their Complaint entitles Plaintiffs to the entry of a default

judgment and request as relief both a permanent injunction and damages.  (Dkt. No. 14.)

Familiarity with the particular grounds for Plaintiffs' motion for default judgment against

Defendants is assumed in this Decision and Order, which is intended primarily for review of the

parties.

After Defendants filed their Answer (*see, infra,* Part I.E. of this Decision and Order),

Plaintiffs served a copy of their motion for default judgment on Defendants' attorney.  (Dkt. No.

20.)  As part of their cross-motion to set aside the default, Defendants responded to Plaintiffs'

motion on August 22, 2011, by arguing that (1) Plaintiffs have not made out a case for injunctive

relief, and (2) Plaintiffs are not entitled to monetary damages because damages are not an

appropriate remedy for contempt, nor have the Plaintiffs followed the correct procedures for

filing a motion for contempt.  (Dkt. No. 21 [Defs.' Memo. of Law].)

Generally, in their reply to Defendants' response to their motion for default judgment,

Plaintiffs argue that (1) Defendants' argument against injunctive relief based on legal authority

governing preliminary injunctions, not permanent injunctions, and is therefore irrelevant; (2)

damages are a proper remedy for contempt; and (3) the clear language of the Consent Judgment

in the prior proceedings compels the award of damages.  (Dkt. No. 24, Attach. 22 [Plfs.' Reply

Memo. of Law].)

**E.      Defendants' Answer and Cross-Motion to Set Aside the Default**

On August 4, 2011, Defendants' filed a notice of appearance and an Answer to Plaintiffs'

Complaint.  (Dkt. No. 19.)  On August 22, 2011, Defendants' filed a memorandum of law

opposing Plaintiffs' motion for default judgment and cross-moving to set aside the default.[1]

(Dkt. No. 21 [Defs.' Memo. of Law].)

Generally, in support of their motion to set aside the default, Defendants argue as

follows:[2] (1) Defendants have a meritorious defense to the Complaint because the Consent

Judgment in the prior proceeding is invalid for several reasons, including the fact that

Defendants agreed to it without first securing counsel; (2) Defendants acted promptly to correct

the default; (3) Defendants are not at fault for the dely in filing an Answer, and (4) Plaintiffs

would not be prejudiced by setting aside the default and allowing this action to proceed on the

merits.  (Dkt. No. 21 [Defs.' Memo. of Law].)

Generally, in response to Defendants' motion, Plaintiffs argue as follows: (1) Defendants

default was willful; (2) Defendants failed to present a meritorious defense, because Defendants

intentionally evaded representation by counsel when the Consent Judgment was entered; (3)

Plaintiffs do not have to prove prejudice under current Second Circuit precedent; and (4)

although they do not have to prove it, Plaintiffs would, in fact, be prejudiced by setting aside the

default.  (Dkt. No. 24, Attach. 22 [Plfs.' Reply Memo. of Law].)

---

[1]      By filing only a memorandum of law in support of their cross-motion, Defendants
violated Local Rule 7.1(a)(2) of the Local Rules of Practice for this Court, which requires that all
such motions include a supporting affidavit.  N.D.N.Y. L.R. 7.1(a)(2).  However, in the interest
of judicial efficiency, the Court will consider the motion as if it had been properly filed.  Counsel
is respectfully reminded to comply with the District's Local Rules in future proceedings.

[2]      As Plaintiffs note in their reply memorandum of law, Defendants rely on Fourth
Circuit case law for their argument to set aside the default.  As noted below in Part II.B. of this
Decision and Order, the Second Circuit has its own standard for setting aside a default that
controls in this case.

F.     **Plaintiffs' Motion to Strike Defendants' Answer**

On August 22, 2011, Plaintiffs filed a motion to strike Defendants' Answer as untimely. (Dkt. No. 22.)  Generally, in support of their motion, Plaintiffs argue as follows: (1) Defendants failed to file a timely Answer or request an extension of time in which to do so, and (2) Defendants' motion to set aside the default has no merit.  (Dkt. No. 22, Attach. 13.)

Defendants did not respond to this motion.  (*See generally* Docket Sheet.)

## II.   RELEVANT LEGAL STANDARDS

A.     **Legal Standard Governing a Motion for Default Judgment**

"Federal Rule of Civil Procedure 55 provides a two-step process that the Court must follow before it may enter a default judgment against a defendant." *Robertson v. Doe*, 05-CV-7046, 2008 WL 2519894, at *3 (S.D.N.Y. June 19, 2008).  "First, under Rule 55(a), when a party fails to 'plead or otherwise defend . . . the clerk must enter the party's default.'" *Robertson*, 2008 WL 2519894, at *3 (quoting Fed. R. Civ. P. 55[a]).  "Second, pursuant to Rule 55(b)(2), the party seeking default judgment is required to present its application for entry of judgment to the court." *Id.*  "Notice of the application must be sent to the defaulting party so that it has an opportunity to show cause why the court should not enter a default judgment." *Id.* (citing Fed. R. Civ. P. 55[b][2]).  "When an action presents more than one claim for relief . . . , the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties . . . if the court expressly determines that there is no just reason for delay."  Fed. R. Civ. P. 54(b).

When a court considers a motion for the entry of a default judgment, it must "accept[ ] as true all of the factual allegations of the complaint . . . ." *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) (citations omitted).  "However, the court cannot construe the damages alleged in the complaint as true." *Eng'rs Joint Welfare, Pension, Supplemental Unemployment*

*Benefit and Training Funds v. Catone Constr. Co., Inc.*, 08-CV-1048, 2009 WL 4730700, at *2

(N.D.N.Y. Dec. 4, 2009) (Scullin, J.) (citing *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183

F.3d 151, 155 [2d Cir. 1999] [citations omitted]).  "Rather, the court must 'conduct an inquiry in

order to ascertain the amount of damages with reasonable certainty.'"  *Eng'rs Joint Welfare,*

*Pension, Supplemental Unemployment Benefit and Training Funds*, 2009 WL 4730700, at *2

(quoting *Alcantara*, 183 F.3d at 155 [citation omitted]).  This inquiry "involves two tasks: [1]

determining the proper rule for calculating damages on such a claim, and [2] assessing plaintiff's

evidence supporting the damages to be determined under this rule."  *Alcantara*, 183 F.3d at 155.

Finally, in calculating damages, the court "need not agree that the alleged facts constitute a valid

cause of action . . . ."  *Au Bon Pain*, 653 F.2d at 65 (citation omitted).

###        B.        Legal Standard Governing a Motion to Set Aside an Entry of Default

A clerk's entry of default may be set aside by a court for good cause.  Fed. R. Civ. P.

55(c).  "Generally, the standard for setting aside the entry of a default pursuant to [Fed. R. Civ.

P.] 55(c) is less rigorous than the 'excusable neglect' standard for setting aside a default

judgment by motion pursuant to [Fed. R. Civ. P.] 60(b)."  *Gates v. Wilkinson*, 03-CV-0763, 2005

WL 3115826, at *1 (N.D.N.Y. Nov. 21, 2005) (Sharpe, J.) (citing *Meehan v. Snow*, 652 F.2d

274, 276 [2d Cir. 1981]).  "Courts in this Circuit have construed 'good cause' in this context

broadly."  *Brady v. W. Overseas Corp.*, 04-CV-2878, 2008 WL 4936875, at *4 (E.D.N.Y. Nov.

14, 2008) (citing *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 [2d Cir. 1993]).

"In deciding whether good cause exists, the court examines [the following] three factors:

(1) whether the default was willful; (2) whether setting aside the default would prejudice the

adversary; and (3) whether a meritorious defense is presented."  *Brady*, 2008 WL 4936875, at

*4.  "In applying this analysis, the court must bear in mind the well-established preference for

resolving litigation disputes on the merits." *Id.* "Any doubts as to whether a default should be vacated must be resolved in favor of trial on the merits." *Id.*

As to the first factor, willfulness within this Circuit does not include careless or negligent errors even when the negligence is gross. *Am. Alliance Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996).

As to the second factor, "[t]o establish prejudice in the context of a default, there must be a showing that the delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Arthur F. Williams, Inc. v. Helbig*, 208 F.R.D. 41, 45 (E.D.N.Y. 2002) (quoting *Davis v. Musler*, 713 F.2d 907, 916 [2d Cir. 1983]) (internal quotation marks omitted).

As to the third factor, a defense is meritorious where it is "good at law so as to give the fact finder some determination to make." *Addison v. Reitman Blacktop, Inc.*, 272 F.R.D. 72, 81 (E.D.N.Y. 2010) (quoting *Am. Alliance Ins. Co., Ltd.,* 92 F.3d at 61).  The test to determine whether a meritorious defense has been presented is measured "not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *Enron Oil Corp.*, 10 F.3d at 98.  Evidence must be submitted to support the proposed defense amounting to more than a conclusory denial. *Id.*  However, allegations can found to be meritorious where "they contain even a hint of a suggestion which, if proven at trial, would constitute a complete defense." *Weisel v. Pischel*, 197 F.R.D. 231, 239 (E.D.N.Y. 2000) (quoting *Keegel v. Key West & Caribbean Trading Co., Inc.*, 627 F.2d 372, 374 [D.C. Cir. 1980]).

### C.     Legal Standard Governing a Motion to Strike an Answer as Untimely

Ordinarily, a motion to strike an answer (or a portion of an answer) arises under Fed. R.

Civ. P. 12(f).  While such motions to strike are generally disfavored, a district court's sound

discretion to grant such a motion is properly exercised if it is clear that the defenses asserted in

the answer could not succeed.  *Connell v. City of New York*, 230 F. Supp.2d 432, 438 (S.D.N.Y.

2002).

However, where a motion to strike an answer is based on untimeliness, such a motion

does not properly arise under Fed. R. Civ. P. 12(f), which regards only "an insufficient defense

or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).[3]  Rather,

such a motion properly arises under the Court's authority to enforce the deadline for filing an

answer established by the Fed. R. Civ. P. 12(a)(2) (and any relevant Local Rules of Practice).[4]

Generally, such a motion is governed by the same standard that governs a motion to set aside an

---

[3]      *See, e.g., Canady, M.D. v. Erbe Elektromedizin GMBH*, 307 F. Supp.2d 2, 7-8 (D.
D.C. 2003) (deciding motion to strike pleading without referencing Fed. R. Civ. P. 12[f]).

[4]      *See, e.g., Webster Capital Fin., Inc. v. Milt's Eagle, LLC*, 09-CV-1367, 2011 WL
1155440, at *1 (D. Nev. March 28, 2011) ("As an alternative basis for striking improper filings
[of untimely answers], a district court has inherent power over the administration of its business.
It has inherent authority to promulgate and enforce rules for the management of litigation.")
(internal quotation marks and citation omitted); *Topp, Inc. v. Uniden Am. Corp.,* 05-CV-21698,
2007 WL 3104995, at *1 (S.D. Fla. Oct. 22, 2007) ("Topp's filing is untimely [under the Fed. R.
Civ. P. 12(a)(2)] and the Court does not grant leave to Topp to amend its Answer. As a result, no
further discussion of the standard to strike a pleading under Rule 12(f) is warranted."); *Canady*,
307 F. Supp.2d at 8 ("According to Rule 12(a)(2), the plaintiffs had to serve their answer to the
counterclaims on or about August 25, 1997. Fed. R. Civ. P. 12(a)(2).

It is therefore undisputed that the plaintiffs missed the deadline by more than six months when
they filed their answer in March 1998. Pls.' Opp'n at 2. As a result, the court may exercise its
discretion to grant the defendants' motion to strike.").

entry of default.[5]

### D.    Legal Standard Governing Unopposed Motions

In this District, when a non-movant fails to oppose a legal argument asserted by a movant in support of a motion, the movant's burden with regard to that argument has been lightened such that, in order to succeed on that argument, the movant need only show that the argument possesses facial merit, which has appropriately been characterized as a "modest" burden.  *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein...."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1 n. 1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL 2473509, at *2 & n. 3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

## III.    ANALYSIS

### A.    Whether Defendants' Cross-Motion to Set Aside the Clerk's Entry of Default Should Be Granted

After carefully considering the matter, the Court finds that Defendants have met their burden to have the entry of default set aside with regard to Count VIII of Plaintiffs' Complaint for the reasons stated in Defendants' memorandum of law.  (Dkt. No. 21, at 8-23 [attaching pages "8" through "23" of Defs.' Memo. of Law].)  However, the Court finds that Defendants

---

[5]    *See, e.g., Candelaria v. Erickson*, 01-CV-8594, 2005 WL 1529566, at *10-11 (S.D.N.Y. June 28, 2005) (examining willfulness, prejudice and meritoriousness of defenses in denying motion to strike untimely answer).  Presumably, this is because, as a practical matter, it would make little difference if a motion to strike were denied, where a cross-motion to set aside the entry of default were also denied: the result would likely be a default judgment in the plaintiff's favor.  Similarly, it would make little difference if a motion to strike were granted, where a cross-motion to set aside the entry of default were also granted: the result would likely be granting of a subsequent motion for leave to file a belated complaint pursuant to Fed. R. Civ. P. 6(b)(1)(B).

have *not* met their burden to have the entry of default set aside with regard to the remainder of

Plaintiffs' Complaint for the reasons stated in Plaintiffs' opposition memorandum of law.  (Dkt.

No. 24, Attach. 22, at 6-18 [attaching pages "2" through "14" of Defs.' Memo. of Law].)  The

Court would add only the following rationale.

    The first factor to consider in deciding whether to set aside a default is whether the

default was willful.  *Brady*, 2008 WL 4936875, at *4.  Here, the Court finds that Defendants'

default was willful.  Defendants do not argue that they were unaware of the lawsuit.  Rather, they

argue that Plaintiffs and Defendants' Nevada counsel were in settlement negotiations during the

time in question, and that Defendants did not seek counsel in New York until those negotiations

fell apart.  (Dkt. No. 21, at 14-5.)  Defendants' desire to forgo obtaining counsel is not sufficient

to excuse their duty to file an Answer to Plaintiffs' Complaint.[6]  Granted, some courts have held

that a reasonable or good faith belief that a case would actually settle may excuse a failure to file

an answer to a complaint.[7]  However, this does not appear to be the majority view.[8]  More

---

[6]    *See JPMorgan Chase Bank, N.A. v. Pandolfelli,* No. 09-02068, 2010 WL
3745123, at *3 (Bkrtcy. D. N.J. Sept. 14, 2010) ("Although the Court can appreciate the
Defendant's desire to protect his rights through the representation by counsel, this does not
relieve him from the obligation to defend the litigations against him within the confines of the
applicable rules. Because the Defendant's only proffered reason for the delay in answering the
complaints is that he preferred not to defend these suits until he could afford counsel of his
choice, the Court finds that the delay was entirely within his control. As such, the Court finds
that this element of the Pioneer analysis weighs in favor of willful neglect rather than excusable
neglect.").

[7]    *See, e.g., Gonzalez v. City of New York*, 104 F. Supp.2d 193, 196 (S.D.N.Y.2000).

[8]    *See, e.g., Int'l Painters & Allied Union & Indus. Pension Fund v. H.W. Ellis
Painting Co.*, 288 F. Supp.2d 22, 28 n. 4 (D.D.C. 2003) (noting that the Gonzalez holding "does
not represent the majority view"); *Medline Indus., Inc. v. Medline Rx Fin.*, 218 F.R.D. 170, 172
(N.D.Ill. 2003) ("[On]-going settlement discussions are not good cause for failing to answer a
pleading. . . .  Settlement discussions occur, or at least should occur, in every dispute. A party's
belief that a case will settle does not justify its failure to answer a complaint. And when
settlement discussions have not resolved the issue, they cannot even begin to constitute good
cause for default."); *U.S. v. Topeka Livestock Auction, Inc.*, 392 F. Supp. 944, 950-51 (N.D.

important, even if it were the rule in the Second Circuit, the Court would find that the rule does

not apply to this case for the following two alternative reasons: (1) Defendants have not adduced

evidence establishing that they believed both that (a) the case would actually settle and (b) the

settlement excused the duty to answer;[9] (2) in any event, any such belief would not have been

reasonable or in good faith, given that the admissible record evidence establishing that

Defendants abruptly terminated the settlement negotiations on or about December 7, 2010,

abruptly resumed them on or about May 11, 2011, and abruptly terminated them again on or

about June 13, 2011.

     Simply stated, Defendants (who were represented by counsel during the time in question)

were aware, or reasonably should have been aware, that, without a court order providing

otherwise, the settlement negotiations in which they engaged did not relieve them of their duty to

file a timely Answer.  Despite this fact, Defendants took no actions in this case until more than

four months after their initial response was due (and then only after Plaintiffs had filed a motion

for default judgment).  As a result, the Court finds Defendants' default was sufficiently willful to

weigh in favor of denying their motion to set aside the default.

     Skipping for the moment the second factor to be considered in deciding whether to set

aside a default (whether setting aside the default would prejudice Plaintiffs), the Court proceeds

to an analysis of the third factor to be considered (whether the Defendants can present a

---

Ind.1975) ("[O]ngoing settlement negotiations are not a sufficient reason for a failure to file an
answer."); *Mitchell v. Eaves*, 24 F.R.D. 434, 435 (E.D. Tenn. 1959) ("A hope of settlement does
not justify a failure to obtain an extension of time to answer.").

    [9]    *See Todtman, Nachamie, Spizz & Johns, P.C. v. Ashraf*, 241 F.R.D. 451, 455
(S.D.N.Y. 2007) ("Ashraf's affidavit fails entirely to demonstrate that at any time he had a good
faith or reasonable belief that the case would actually settle so as to justify defendants' failure to
respond to the summons and complaint.").

meritorious defense).  *Brady*, 2008 WL 4936875, at *4.  With regard to this factor, Defendants

raise only one defense in their motion: that the Consent Judgment in the prior proceeding is

invalid for four reasons: (1) the Court authorized the Consent Judgment without holding any

evidentiary hearings, receiving detailed affidavits, or considering documentary evidence; (2)

Defendants were not represented by counsel; (3) there were material conflicts of interest between

the corporate officers negotiating the settlement; and (4) the Consent Judgment violates Fed. R.

Civ. P. 54(c) because the relief awarded exceeds that request in the Complaint.  (Dkt. No. 21, at

9-12.)

Defendants do not provide any explanation, evidence, or legal authority to support the

third and fourth reasons proffered by Defendants.  In addition, the fourth reason proffered by

Defendants, that the Consent Judgment violated Fed. R. Civ. P.  54(c), appears inapposite,

because Fed. R. Civ. P. 54(c) refers to *default* judgments, not consent judgments.  As a result, the

Court rejects the third and fourth reasons proffered by Defendants.

Turning to the first reason proffered by Defendants (that the Consent Judgment was

entered without any evidentiary fact-finding by the Court), Defendants do not cite any authority

for that factual assertion.  In any event, because a consent judgment is agreed to by the parties, a

court does not need to engage any fact-finding before entering a consent judgment.  As a result,

the Court rejects the first reason proffered by Defendants.

With regard to the second reason proffered by Defendants (that Defendants were not

represented by counsel at the time the Consent Judgment was entered), it is well settled that

corporations may not appear in federal court except through an attorney.  *Grace v. Bank Leumi

Trust Co. of NY*, 443 F.3d 180, 192 (2d Cir. 2006) (citing *S.E.C. v. Research Automation Corp.,*

521 F.2d 585 [2d Cir. 1975]).  The Consent Judgment clearly indicates that Defendant Air

Freshners, Inc., appeared *pro se.*  (Dkt. No. 1, Attach. 2, at 6.)  Plaintiffs argue in their reply that

Defendants failed to secure an attorney in the prior proceedings despite being advised by both

Plaintiffs and Magistrate Judge Peebles that an attorney was required.  (Dkt. No. 24, Attach. 22,

at 7-8 [Plfs.' Reply Memo. of Law].)  Plaintiffs further argue that Defendants entered into the

Consent Judgment solely to avoid a default judgment that would have potentially included

attorney's fees and costs.  (*Id.*)  Neither of these arguments, however, constitutes a valid

exception to the rule that a corporation may not enter into a consent judgment *pro se.  N.Y.S.*

*Teamsters Conference Pension & Retirement Fund v. Comac Builders Supply Corp.*, 06-CV-

0208, 2008 WL 150515 (N.D.N.Y. Jan. 14, 2008) (Scullin, J.), *rejecting*, 2007 WL 4722607

(N.D.N.Y. Oct. 3, 2007) (Lowe, M.J.).[10]

　　　　As a result, after careful consideration of both parties' filings, the Court finds that

Defendants' lack of counsel in the prior proceeding is a meritorious defense.  However, the

Court hastens to add that the lack of counsel is a meritorious defense only with regard to Count

VIII of the Complaint.  This is because Counts I through VII of the Complaint are based on

Defendants' alleged violations of Plaintiffs' trademarks and not on Defendants' violation of the

Consent Judgment.  Defendants do not present a meritorious defense to Counts I through VII.

　　　　Having concluded its consideration of the third factor governing the setting aside of

defaults, the Court proceeds to consideration of the second factor (whether setting aside the

default would prejudice Plaintiffs).  However, because the Court has found no meritorious

---

[10]　　　While the Court is entirely sympathetic with the plight of a plaintiff faced with
the inability to obtain a cost-effective consent judgment against a defendant corporation
unwilling or perhaps unable to retain counsel, the Court respectfully finds that the proper course
of action would have been to either (1) insist that Defendant Air Freshners, Inc., retain counsel
before settling or agreeing to the Consent Judgment or (2) obtain a default judgment against
Defendants.

defense to Counts I through VII of the Complaint, the Court need not consider the third factor
with regard to Counts I through VII.  This is because a district court has the discretion to deny a
motion to set aside a default if the district court is persuaded that the default was willful and is
unpersuaded that the defaulting party has a meritorious defense, without reaching the question of
whether the non-defaulting party would be prejudiced.  *S.E.C. v. McNulty*, 137 F.3d 732, 737 (2d
Cir. 1998).  Rather, the Court may, and does, deny Defendants' motion to set aside the default as
to Counts I through VII without further consideration.

Proceeding to consideration of the second factor with regard to Count VIII of the
Complaint, the Court begins by noting that, while Defendants argue in their memorandum of law
that Plaintiffs would not be prejudiced by an adjudication on the merits, they support those
arguments with only legal conclusions and without evidence or cites to precedent from the
Second Circuit.  (Dkt. No. 21, at 15-16.)  In their opposition, Plaintiffs argue there would be a
potential for the loss of evidence and increased difficulties of discovery due to turnover in
Defendants' employees.  (Dkt. No. 24, Attach.  22, at 12; Dkt. No. 22, Attach. 13, at 14.)
However, Plaintiffs have not demonstrated that relevant witnesses would become unreachable or
otherwise become more difficult to subpoena.  Plaintiffs also argue that, given Defendants
previous behavior in defaulting, setting aside the default would provide Defendants a greater
opportunity for fraud or other misconduct.  (*Id.*)  Plaintiffs state that they have evidence that
Defendant Warzocha may have destroyed or conspired to destroy documents.  (*Id.*)  However,
Plaintiffs' evidence appears to consist solely of an attack on Defendant Warzocha's credibility.
(*Id.*)  While Plaintiffs have raised the potential of fraud on the part of Defendants, they have not
persuaded the Court that Defendants will, with any certainty, commit fraud in further
proceedings as required by the standard.  As a result, the Court finds Plaintiffs have failed to
show any substantial prejudice they will suffer if  Count VIII is resolved on the merits.

In short, as to Count VIII of the Complaint, the Courts finds that (1) Defendants' default was willful, (2) Plaintiffs have not shown that they will be substantially prejudiced by setting aside the default, and (3) Defendants' have raised a meritorious defense.  As the Second Circuit has noted, defaults are generally disfavored, as opposed to a resolution on the merits; as a result, "when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Enron Oil Corp.*, 10 F.3d at 96.

For all of these reasons, the Clerk of the Court's entry of default  as to Count VIII of the Complaint is set aside.  However, the Clerk of the Court's entry of default as to Counts I through VII of the Complaint stands; and the factual allegations supporting those Counts are deemed to be admitted for purposes of consideration of Defendants' motion for default judgment.

Finally, in light of the fact that Plaintiffs will receive all of the relief they request in Counts I through VII of their Complaint (for the reasons set forth below in Part III.C. of this Decision and Order), the Court directs that they inform the Court in writing within fifteen days of the date of this Decision and Order whether Plaintiffs wish to continue to prosecute  Count VIII of their Complaint.

### B.      Whether Plaintiffs' Motion to Strike Defendants' Answer Should Be Granted

After carefully considering the matter, the Court finds that Plaintiffs have met their burden to have Counts I through VII of Defendants' Answer struck for the reasons stated in Plaintiffs' memorandum of law.  (Dkt. No. 22, Attach. 13, at 12-19 [attaching pages "8" through "15" of Plfs.' Memo. of Law].)  However, the Court finds that Plaintiffs have *not* met their burden to have Count VIII of Defendants' Answer struck for the reasons stated in Part III.A. of this Decision and Order: while Plaintiffs have shown that Defendants' failure to file a timely Answer to Count VIII of Plaintiffs' Complaint was willful, Plaintiffs have not shown that they

16

will be substantially prejudiced by permitting Defendants to do so now, and Defendants have raised a meritorious defense with regard to Count VIII. *See, supra,* Part III.A. of this Decision and Order.

The Court would add only the following brief point. The Court's finding that Defendants' untimely Answer should be stricken as to those parts that regard Counts I through VII is further supported by the fact that, by failing to file any opposition to Plaintiffs' motion to strike, Defendants have lightened Plaintiffs burden on that motion such that, in order to succeed on it, Plaintiffs need only show that the motion possesses facial merit. *See, supra,* Part II.D. of this Decision and Order. Clearly, Plaintiffs have met that lightened burden, at the very least.

For these reasons, Defendants' untimely Answer is stricken only as to those parts that regard Counts I through VII. The remainder of Defendants' Answer stands.

**C.    Whether Plaintiffs' Motion for Default Judgment Should Be Granted**

After carefully considering the matter, the Court answers this question in the affirmative as to Counts I through VII of the Complaint, generally for the reasons stated in Plaintiffs' memorandum of law. (Dkt. No. 14, Attach. 4, at 15-26 [attaching pages "9" through "20" of Plfs.' Memo. of Law].) However, the Court answers this question in the negative as to Count VIII of the Complaint, generally for the reasons stated in Defendants' opposition memorandum of law, and the reasons stated above in Part III.A. of this Decision and Order. (Dkt. No. 21, at 8-23 [attaching pages "8" through "23" of Defs.' Memo. of Law].) *See also, supra,* Part III.A. of this Decision and Order.[11]  More specifically, the Court finds as follows.

_____

[11]    Of course, for the reasons described above in Part III.A. of this Decision and Order, the Court awards Plaintiffs' requested relief only as it applies to the various claims of trademark infringement, trademark dilution, and unfair competition. The Court does not, in this Decision and Order, award Plaintiffs any damages or other relief based on Defendants' alleged

### 1.    Request for Injunctive Relief

After carefully considering Plaintiffs' motion, the Court is satisfied that Plaintiffs' have met their burden of establishing a valid basis for the permanent injunction they seek, again generally for the reasons stated in Plaintiffs' memorandum of law.  (Dkt. No. 14, Attach. 4, at 17-22 [attaching pages "11" through "16" of Plfs.' Memo. of Law].)  The Court would only add the following points.

As noted by the Plaintiffs in their reply memorandum of law, Defendants' arguments in opposition to the granting of an injunction are based on the standards for preliminary injunctions and are therefore not germane to the issue before this Court.  (Dkt. No. 21, at 16-21 [attaching pages "16" through "21" of Defs.' Memo. of Law]; *see also* Dkt. No 24, Attach. 22, at 16 [attaching page "12" of Plfs.' Reply Memo. of Law].)  As noted above in Part III.A. of this Decision and Order, Defendants' default on Counts I through VII of the Complaint results in the facts underlying those Counts being deemed admitted for purposes of Plaintiffs' motion for default judgment.  *See, supra,* Part III.A. of this Decision and Order.  The Court therefore finds that Defendants' repeated, willful infringement of Plaintiffs' trademarks warrant an injunction ordering Defendants to stop all current and future infringement.

However, Plaintiffs' proposed default judgment would enjoin Defendants from producing *any* air fresheners with a tree design.  (Dkt.  No. 14, Attach. 8, at 6-7.)  In the Court's view, this request is too broad, given that Plaintiffs' trademarks depict only a pine tree design.  It is conceivable that Defendants could produce air fresheners in the design of another variety of tree that is sufficiently distinct and would then not infringe upon Plaintiffs' trademark.  For these

---

violation of the Consent Judgment in the prior proceedings.

reasons, the Court will limit the injunctive relief only to Plaintiffs' trademarked pine tree-shaped designs as well as all designs that are colorable imitations of Plaintiffs' trademarks.

### 2.    Request for Damages, Costs and Attorneys' Fees

As stated above in Part I.D. of this Decision and Order, Plaintiffs seek as part of the default an award of damages, attorney's fees, and costs pursuant to 15 U.S.C. § 1117(a).  *See, supra,* Part I.D. of this Decision and Order.  Based on the current record, the Court reserves decision on the award of damages, costs, and attorneys' fees.

Section 1117(a) provides as follows:

> When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (4) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.  The court shall assess such profits and damages or cause the same to be assessed under its direction.  In assessing profits, the plaintiff shall be required to prove defendant's sales only; defendant must prove all the elements of cost or deduction claimed. . . . The court in exceptional cases may award reasonable attorney fees to the prevailing party.

15 U.S.C. § 1117(a).

In support of their damages request, Plaintiffs have provided, inter alia, the declaration of Jody R.A. LaLone, as well as documentation obtained from two different sources, which demonstrate that Defendants' sales of infringing products in the amount of $39,279.37.  (Dkt. No. 15, at ¶¶ 19-20; Dkt. No. 16, Attach. 6 [attaching Ex. Q to LaLone Decl.]; Dkt. No. 16, Attach. 7 [attaching Ex. R to LaLone Decl.].)  More specifically, this sum consists of $38,869 in sales by Defendants to Beck & Call in two separate transactions as well as $410.37 in sales through Mapleleaf Promotions as an intermediary to Plaintiffs investigator.  (*Id.*)

Furthermore, as part of their damage request, Plaintiffs request the Court exercise its authority under that section to award them treble damages.  (Dkt. No. 14, Attach. 4, at 24 [attaching page "18" of Plfs.' Memo. of Law].)[12]  Finally, although 15 U.S.C. § 1117(a) permits the Court to award Plaintiffs costs and attorneys' fees, and Plaintiffs request such an award in their motion, they did not provide the Court with any documentation in support of their request for costs and attorneys' fees.  (*Id.*)

In their response, Defendants argue only that the damages request by Plaintiffs would be improper as a sanction for contempt.  (Dkt. No. 21, at 21-23 [attaching pages "21" through "23" of Defs.' Opp'n Memo. of Law].)  Defendants never provide any calculations of costs or deductions for the sales in question, nor do they respond to Plaintiffs' requests for treble damages, costs, and attorneys' fees.  (*See generally id.*)

While the Court could deem the above-described requests by Plaintiffs to have been consented to by Defendants through their failure to respond (*see, supra,* Part II.D. of this Decision and Order), the Court declines to do so at this time, in the interest of justice and efficiency.  Rather, the Court will afford the parties an opportunity to provide to it the information outlined above relating to damages (e.g., Defendants' calculations of costs and deductions for the sales in question, as well as a response to Plaintiffs' requests for treble damages, costs, and attorneys' fees), so that the Court can render an informed decision.

For the same reason, the Court will afford the parties an opportunity to provide further briefing on the issue of Defendant Warzocha's personal liability for the infringement alleged in this action. Plaintiffs argue that Defendant Warzocha, as an officer of  Defendant Air Freshners,

---

[12]     Section 1117(a) permits the Court to use its discretion to award damages up to three times the amount as actual damages.  15 U.S.C. § 1117(a).

Inc., was personally involved in the decision to infringe Plaintiffs' trademarks.  (Dkt. No. 14,

Attach. 4, at 25-26 [attaching pages "19" and "20" of Plfs.' Memo. of Law].)  Plaintiffs argue

that Defendant Warzocha should therefore be jointly and severally liable for Defendant Air

Freshners, Inc.'s infringement.  (*Id.*)  However, Plaintiffs do not provide any evidentiary support

for this argument.  (*Id.*)  Although Defendants do not respond to this argument in a memorandum

of law, the record contains an email message from Defendant Warzocha to Plaintiffs' counsel

dated October 23, 2010, in which Warzocha denies personal responsibility for the infringement

and claims that the employee responsible for the infringement did so in Defendant Warzocha's

absence.  (Dkt. No. 16, Attach. 10 [attaching Ex.  U to LaLone Decl.].)  Under the

circumstances, more briefing on this issue would be welcome.

Plaintiffs shall file their supplemental brief (including any affidavits) within fifteen days

of the date of this Decision and Order; and Defendants shall file their supplemental brief within

thirty days of the date of this Decision and Order.

**ACCORDINGLY**, it is

**ORDERED** that, Plaintiffs' motion for entry of default judgment against Defendants

(Dkt. No. 14) is **GRANTED** **in part** and **DENIED** **in part**; and it is further

**ORDERED** that Defendants' motion to set aside the Clerk's entry of default (Dkt. No.

21) is **GRANTED** **in part** and **DENIED** **in part**; and it is further

**ORDERED** that Plaintiffs' motion to strike Defendants' Answer (Dkt. No.  22) is

**GRANTED** **in part** and **DENIED** **in part**; and it is further

**ORDERED** that Defendants' default as to Count VIII of the Complaint is **SET ASIDE**;

and it is further

**ORDERED** that Defendants' Answer is **<u>STRICKEN</u>, except** for those parts that apply to Count VIII of the Complaint; and it is further

**ORDERED** that Defendants shall **IMMEDIATELY** cease all use of, and reference to, "LITTLE TREE," "LITTLE TREES," "MAGIC TREE," and "CAR FRESHNER," or the phonetic equivalents, with or without punctuation between the words, as those terms are used to describe Plaintiffs' trademarks with registration numbers 675,796; 798,701; 1,017,831; and 1,990,039, to promote or refer to air fresheners on Defendants' web sites, meta tags, search engine listings, any form of advertising or promotional materials, packaging, and products; and it is further

**ORDERED** that Defendants shall **IMMEDIATELY** cease all manufacture, procurement, promotion, distribution, or sale of any air fresheners in the shape of or incorporating any of Plaintiffs trademarked pine tree designs or that are otherwise colorable imitations of Plaintiffs' tree design marks, as represented by trademark registration numbers. 719,498; 1,131,617; 1,781,016; 1,791,233; 3,766,310; and it is further

**ORDERED** that Defendants shall, within **SIXTY (60) DAYS** of the date of this Decision and Order, surrender to Plaintiffs all materials, including promotional materials, dies, and tooling, related to the manufacture or promotion of Plaintiffs' trademarked pine tree-shaped air fresheners, specifically those pine tree-shaped air fresheners embodied in trademark registration numbers 719,498; 1,131,617; 1,781,016; 1,791,233; 3,766,310; and it is further

**ORDERED** that Defendants shall, within **SIXTY (60) DAYS** of the date of this Decision and Order, deliver to Plaintiffs' counsel documentation showing all pine tree-shaped air fresheners manufactured, produced, sold, or otherwise distributed by Defendants after September 22, 2003; and it is further

**ORDERED** that Defendants shall, no later than October 1, 2012, file with the Court and serve on Plaintiffs a report in writing and under oath setting forth in detail the manner and form in which Defendants have complied with the terms of this Decision and Order, in accordance with the provisions of 15 U.S.C. § 1116(a); and it is further

**ORDERED** that Plaintiffs' counsel shall, within **FIFTEEN (15) DAYS** of the date of this Decision and Order, file with the Court briefing papers with calculations of an award of damages, attorneys' fees, and costs under 15 U.S.C. § 1117(a), as stated above in Part III.B.2. of this Decision and Order; and it is further

**ORDERED** that Plaintiffs' counsel shall, also within **FIFTEEN (15) DAYS** of the date of this Decision and Order, inform the Court in writing as to whether Plaintiffs wish to continue to prosecute Count VIII of their Complaint; and it is further

**ORDERED** that Defendants' counsel shall file his supplemental brief on the above-described issues within **THIRTY (30) DAYS** of the date of this Decision and Order.

Date:   August 10, 2012
        Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge